MARY T. DAVIS, widow of WILLIAM T. DAVIS, *vs.* PEOPLES RAILWAY COMPANY, a corporation of the State of Delaware.

*Case—Personal Injuries—Negligence—Contributory Negligence—Nonsuit.*

There being no evidence submitted by the plaintiff from which negligence on the part of the defendant company could be reasonably inferred by the jury, and negligence on the part of the defendant being fully and conclusively shown, the Court directed that a nonsuit be entered. This being refused by the plaintiff the jury were instructed to find a verdict for the defendant.

(*January 12, 1904.*)

LORE, C. J., and SPRUANCE and GRUBB, J. J., sitting.

*Horace Greeley Knowles* for plaintiff.

*William S. Hilles* for defendant.

Superior Court, New Castle County, November Term, 1903.

ACTION ON THE CASE (No. 134, February Term, 1903), to recover damages for the death of plaintiff's husband, alleged to have been occasioned on October 17, 1902, at Third and King Streets in the City of Wilmington, through the negligence of the servants of the defendant company; said negligence being laid in the narr, in substance, as follows:

*First*, excessive speed of the car; *second*, failure to sound the gong; *third*, that the car was not under proper control; *fourth* failure to keep a proper lookout ahead; *fifth*, failure of the company's servants to exercise proper care and vigilance in stopping the car after having seen (or after being in a position where they should have seen) the intestate in a place of danger.

At the trial, the plaintiff, in support of the above allegations of negligence, produced the following evidence:

MICHAEL GRADY.

*By Mr. Knowles:*

Q. Where were you standing and where were you going at the time of the accident? A. I started out of the house (N. W. Cor. Third and King) to go over and telephone for a ton of coal— Coal was scarce. On my way going over to the market house I took a cut from the door to go bias across the street and I happened to be in the middle of Third Street crossing; and this car came along. The car was ringing its bell—or rather the motorman was ringing the bell; and this man stepped deliberately in front of the car. This man started about from three to four feet below the flag to go across the street and he throwed up his hands and went sideways, that way, for a distance I suppose maybe of ten feet and the car bumped him again and he still stayed on his feet, but the car came up the third time and pushed him over; and this bolster, or whatever you call it that sits on the truck, came along and it caught him and rolled him over three times and then the wheel came up on him.

CROSS EXAMINATION.

*By Mr. Hilles:*

X. Did you see the motorman? A. I did.

X. What was he doing while you were going by? A. Well, he seemed to be doing what he could.

X. What do you mean by that? What was he doing? I mean what could you see him do? A. He had his hand on the lever or crank, whatever you would call it, and seemed to be trying to work it.

WILMER C. TAYLOR.

*By Mr. Hilles:*

X. The motorman rang his bell where? A. As he approached the upper crossing.

X. How far away from the crossing do you suppose he was when he rang his bell? A. They generally commence ten or fifteen feet above.

X. How long did he continue to ring his bell? A. I don't know. I heard it ring several times; don't know how long.

X. Did he ring it after he got over this crossing? A. I did not take notice. He might, but I did not hear it.

\* \* \* \* \* \* \* \* \* \*

X. He was going in which direction then? A. He was crossing from the west to the east side of King.

X. He must have been there (indicating) going down the track? A. He was trying to cross the track diagonally; that is, he was moving down King Street as well as trying to get across it. He seemed to be trying to get out of the road of the car.

X. What was the motorman of the car doing at this time? A. Had his arm up trying to put the brake down.

X. When did you first see him trying to put the brake down? A. I could not say exactly when I took notice; not until after Mr. Davis had been on the track.

\* \* \* \* \* \* \* \* \* \*

X. Did the motorman try to stop that car so far as you could see? A. He seemed to be using the brake there.

X. That was before the car struck Mr. Davis? A. That was about the time he bumped into him the first time.

X. Did you notice him reverse his car? A. No, sir; did not notice. As soon as he struck Mr. Davis, my eye left the motorman and went on him.

X. But you did see him before he struck Mr. Davis working his brake? A. Yes, sir; I did.

When the plaintiff rested, *Mr. Hilles,* on behalf of defendant, moved for a nonsuit upon the following grounds, viz.:

*First.* That the evidence showed that there was contributory

negligence on the part of plaintiff's intestate; *second*, that there was a variance between plaintiff's evidence and the declarations in her narr.

After argument by the respective counsel, the Court rendered the following opinion:

SPRUANCE, J.:—The gist of this action is negligence. If the death of the plaintiff's husband, William T. Davis, was not caused by the negligence of the defendant company, the plaintiff cannot recover. The negligence of the defendant's agent, the motorman in charge of the car, would, if proved, be the negligence of the defendant company.

The burden of proving negligence rests upon the party by whom it is alleged. In the absence of sufficient evidence to the contrary, the legal presumption is that neither the defendant nor the plaintiff's husband, Davis, was guilty of negligence. But this presumption ceases when overcome by evidence from which the jury might reasonably infer that the party was guilty of negligence.

There is no evidence whatever that the car was not equipped with proper appliances, or that the car or any of its appliances were defective or out of order.

It is clear from the evidence that there was no negligence whatever on the part of the defendant up to the time when Davis went upon, or was about to go upon the track. The gong was sounded when the car was near the northerly crossing of Third Street and was moving slowly from that point until it struck Davis a few feet south of the southerly crossing of said street. The plaintiff claims that the motorman was guilty of negligence in that he did not stop the car after he saw Davis or by the exercise of proper diligence might have seen him in a dangerous position and before he was crushed beneath the car. There is no direct evidence that in that interval the motorman did not do all that could be reasonably required of him under the circumstances. It does not appear from the evidence nor has it been suggested that there

was any proper mode of stopping the car at that time but by the application of the brakes.

The evidence of two of the plaintiff's witnesses, Grady and Taylor, is to the effect that the motorman, as soon as he discovered Davis in a dangerous position, applied the brake and did all he could to stop the car and avoid injury to him and there is no direct evidence to the contrary.

The plaintiff insists that negligence on the part of the motorman should be inferred from the fact that the car did not stop within the distance which certain expert witnesses have testified it could have been stopped, but we do not think that such an inference is justified in view of the direct evidence as to what the motorman did in fact do to stop the car.

We are therefore of the opinion that there is no evidence from which negligence on the part of the defendant company could be reasonably inferred by the jury.

The evidence of negligence on the part of Davis is full and conclusive. After the gong had sounded in due time, and while the car was proceeding at a very moderate speed, he, in the language of the witness Grady " stepped deliberately in front of the car." This was when the car was very close upon him. The interval of time between his thus stepping in front of the car and his being struck by the car was very brief. His negligence in stepping in front of the car was a part of the continuous transaction which terminated in his death.

We are clearly of the opinion that the contributory negligence of Davis was of such a character as to defeat the plaintiff's right of recovery.

We are always reluctant to withdraw a case from the consideration of the jury, but in a proper case, it is our duty to do so.

In this case we would be obliged to set aside a verdict for the plaintiff, as not warranted by the evidence, and we are therefore of the opinion that a nonsuit should be entered.

*Mr. Knowles:* If the Court please, we decline to take a nonsuit.

SPRUANCE, J., charging the jury :

Gentlemen of the jury :—For the reasons which have just been stated in your hearing, we are of opinion that a nonsuit should be entered. The plaintiff, as is her right, declines to take a nonsuit, which, in effect, is a request that the verdict of the jury shall be taken.

For the reasons assigned upon granting the motion for a non-suit, we now instruct you to find a verdict for the defendant.

Verdict for defendant.